Gary L. SPEAS, Appellant,

v.

STATE of Alaska, Appellee.

No. 1555.

Supreme Court of Alaska.

June 15, 1973.

Dick L. Madson, Asst. Public Defender, Fairbanks, Herbert D. Soll, Public Defender, Anchorage, for appellant.

Monroe N. Clayton, Dist. Atty., Fairbanks, John E. Havelock, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

CONNOR, Justice.

The instant sentence appeal reaches this Court in the context of appellant's tragic personal history. Speas was sent to Fairbanks in July, 1969, by the Lutheran Hospital and Homes Society to be Administrator of the Society's Fairbanks hospital. His duties included improving the hospital's operating performance and professional standards to the level of accreditation standards and assisting in developing plans for a new hospital. These substantial responsibilities were made additionally difficult by a series of confrontations with doctors, members of the hospital medical staff, and administrative employees.

Complicating the situation even further, Speas began to experience severe health problems.[1] During the latter months of 1970 he began having recurring headaches. These became worse by January, 1971, and in addition his eyes began to trouble him, and he began having chronic stomach ulcer and hernia problems. He was hospitalized three times between May, 1970, and February, 1971, and a veritable cornucopia of medications were prescribed in an effort to relieve his symptoms.

Agonized by job pressures and pain and receiving no relief from the prescribed medications, Speas sought relief by appropriating for self-administration narcotics from the hospital stores. In his account to the probation officer he mentioned two incidents, one in November, 1970, and one in March, 1971. On April 5, 1971, a college pharmacist discovered that drugs were missing and his suspicions indicted Speas. A police search of the Speas residence ensued, and Speas was ultimately indicted on May 4, 1971, for two counts of illegal use of narcotics in violation of AS 17.10.-040(e).

Speas pleaded guilty to Count II of the indictment (illegal use of morphine), Count I (illegal use of meperidine), being dismissed pursuant to a motion made by the District Attorney. Based on an extensive investigation into the case, the probation officer recommended that imposition of sentence be suspended for two years and that Speas received minimal supervision while on probation during the period of suspension. This recommendation notwithstanding, the judge in pronouncing sentence, held himself bound by the provisions of AS 17.10.200[2] establishing a two-year mandatory minimum sentence. He rejected the argument that the provisions of AS

---

1. Speas has been plagued by medical difficulties throughout his life. At age 11 he was diagnosed as having severe Diabetes Mellitus. At about this same time he developed serious sinus problems and underwent several major operations. In the Fall of 1964, a chronic knee pain was diagnosed as bone cancer. X-ray treatment proved successful, but the possibility of recurrence remains.

2. AS 17.10.200 establishes the penalties for violations of chapter 10 of AS Title 17 (the Uniform Narcotic Drug Act). AS

17.10.200(a) provides in relevant part:
"A person who violates any provision of this chapter except a provision relating to the keeping of records, upon conviction, is punishable by a fine of not more than $5,000 and by imprisonment for not less than two nor more than 10 years."
AS 17.10.200(d) provides:
"The imposition or execution of sentence shall not be suspended and probation or parole shall not be granted until the minimum imprisonment provided in this section for the offense is served."

12.55.080 [3] and AS 12.55.085(a) [4] governing suspended imposition of sentence and probation were applicable to violations of AS Title 17. Rather, he viewed the provisions of AS Title 12 as pertaining only to crimes defined in AS Title 11. Accordingly, he sentenced Speas to two years imprisonment.

In support of the trial judge's ruling the State observes that AS 12.85.010 affords blanket application of AS Title 12 (the Code of Criminal Procedure) ". . . to all criminal actions and proceedings in all courts *except where specific provision is otherwise made . . . .*" (Emphasis added.) It contends that specific provision is indeed otherwise made in AS 17.10.-200(d). It reads this section as requiring that a minimum of two years imprisonment [5] be served before sentence may be suspended or probation or parole be granted.

We find this argument unpersuasive and we hold that the court erred in concluding that the suspended imposition of sentence and probation provisions of AS 12.55.080 and AS 12.55.085(a) do not apply to violations of AS Title 17 in general and to the Uniform Narcotic Drug Act in particular.

Our legislature enacted the language of AS 17.10.200(d) into law in substantially its present form in 1961.[6] In the decade since that enactment, much study and discussion has been devoted to the wisdom and efficacy of mandatory minimum sentences. The American Bar Association, has concluded that "it is inappropriate for the legislature to prescribe minimum terms which must be imposed by the court irrespective of the circumstances." [7] The

---

3. AS 12.55.080 provides:
   "Upon entering a judgment of conviction of a crime, or at any time within 60 days from the date of entry of that judgment of conviction, a court, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution or balance of the sentence or a portion thereof, and place the defendant on probation for a period and upon the terms and conditions as the court considers best."

4. AS 12.55.085(a) provides:
   "If it appears that there are circumstances in mitigation of the punishment, or that the ends of justice will be served, the court may, in its discretion, suspend the imposition of sentence and may direct that the suspension continue for a period of time, not exceeding the maximum term of sentence which may be imposed, and upon the terms and conditions which the court determines, and shall place the person on probation, under the charge and supervision of the probation officer of the court during the suspension."

5. AS 17.10.200(a), note 2 *supra*.

6. Ch. 145 § 1(3) SLA 1961. The history of the evolution of what is now AS 17.-10.200(d) predates statehood. The orig-inal penalty section for narcotics offenses, § 40-3-20, ACLA 1949, contained no minimum sentence before probation or parole provision for first offenders. In 1951 the legislature amended that section, adding the following language:
   "Except in the case of conviction for a first offense for violation of the provisions of this Act, the imposition or execution of sentence shall not be suspended and probation or parole shall not be granted until the minimum imprisonment herein provided for the offense shall have been served." Ch. 26 § 1 SLA 1951.
   This 1951 emendation was itself amended in 1953, when the legislature altered it to provide for imprisonment without parole, probation, or suspension of sentence "except in the case of conviction for a first offense for violation of the provisions of this Act, where such first offense was other than the illegal sale of narcotic drugs. . . ." Ch. 106 § 2 SLA 1953. In this form, what is now AS 17.10.200 (d) became the law of the newly admitted State of Alaska. Alaska Const. Art. XV § 1. It was maintained in this form until the 1961 change noted in the text.

7. American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures (Approved Draft, 1968) at 147. See generally *id.* at 144–53.

Model Penal Code and the Model Sentencing Act are in substantial agreement with this conclusion.[8]

In the area of sentencing procedures our Alaska legislature has occupied a position on the vanguard of responsible reform. AS 12.55.085 was added to AS Title 12, Chapter 55, on April 3, 1965, under the heading "An Act Relating to suspension of imposition of sentence."[9] Less than two weeks later, AS 12.55.080 was repealed and reenacted in its present form as part of "An Act Relating to sentencing, probation, and parole of persons convicted in criminal actions."[10] We note in passing that AS 12.55.080 and AS 12.55.085 postdate both the mandatory minimum sentence provision of AS 17.10.200 and the "except where specific provision is otherwise made" language of AS 12.85.010.

■ In determining whether the mandatory sentence provision or the 1965 enactments control, we are assisted by more recent action of the legislature. In 1968 the legislature amended AS Title 17 by adding a new chapter dealing with depressant, hallucinogenic and stimulant drugs.[11] In its Declaration of Intent preceding the new chapter, the legislature stated:

"The legislature further finds that the distribution and sale of certain drugs are more serious offenses against society *than the mere use of the drugs* and that distribution to a minor is a graver offense than distribution to an adult. *It is*

*the intent of the legislature that this latter factor be considered by the courts in exercising their discretion in imposing the sentences prescribed* in this Act for the distribution and sale of the named drugs."[12] (Emphasis added.)

We read this passage as clearly indicative of the legislature's intent to vest, and recognition that it has in fact vested, broad discretion in the courts in imposing sentence for violations of the drug laws set forth in Title 17, Chapter 12. Our reading is strengthened by the omission from AS Title 17, Chapter 12 of mandatory minimum sentences.[13] Furthermore, AS 17.12.-120 makes specific provision for rehabilitative treatment in lieu of imprisonment in cases of the kind before us:

"A person convicted of violating a provision of this chapter relating to the possession or control of depressant, hallucinogenic and stimulant drugs, when his possession or control is for his own use may, in place of a fine or imprisonment, be committed to the custody of the department for rehabilitative treatment for not more than one year."

■ It remains to relate the effect of this program of legislative development to the mandatory minimum sentence requirement of AS 17.10.200. According to Sutherland,

"On the basis of analogy a number of decisions hold that a doubtful application

---

8. *See*, Advisory Council of Judges of the National Council on Crime and Delinquency. Model Sentencing Act (1963); Model Penal Code § 6.01 et seq. (P.O.D.1962). While the Model Penal Code does impose a short minimum sentence of one year, the reasoning is distinguishable and the requirement is questionable. *See*, American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures (Approved Draft, 1968) at 151–53.

9. Ch. 50 SLA 1965.

10. Ch. 68 § 8 SLA 1965. Also included in this Act was AS 33.15.230, an addition to

AS Title 33, Chapter 15, investing sentencing courts with increased flexibility to determine parole eligibility for defendants sentenced to imprisonment for terms exceeding one year "when in its opinion the ends of justice and the best interests of the public require. . . ." Ch. 68 § 10 SLA 1965.

11. Ch. 225, § 2, SLA 1968. The addition is now Chapter 12 of AS Title 17, entitled "Depressant, Hallucinogenic and Stimulant Drugs."

12. Ch. 225 § 1(c) SLA 1968.

13. AS 17.12.110 defines only maximum penalties.

of a statute will be controlled by the express language of one or several other statutes which are wholly unrelated, but apply to similar persons, things, or relationships. Primarily, the rule is based upon public policy. *By referring to other similar legislation the court is able to learn the purpose and course of legislation in general, and by transposing the clear intent expressed in one or several statutes to a similar statute of doubtful meaning, the court not only is able to give effect to the probable intent of the legislature, but also to establish a more uniform and logical system of law."* (Footnotes omitted, emphasis added.) [14]

A considerable overlap exists between the set of drugs covered by AS Title 17, Chapter 10, and that covered by AS Title 17, Chapter 12.[15] Were we to affirm the trial court's ruling we would be sanctioning a host of anomalous situations. For instance, one individual charged with possession of cannabis under AS 17.10.010 would be required to serve a two-year minimum sentence while another individual, having engaged in identical conduct but charged under AS 17.12.010 would be eligible for rehabilitative treatment. In terms of the facts of the case before us, an individual manifestly in need of and clearly deserving rehabilitative treatment would be denied such treatment because the indictment was issued under Chapter 10, while that same individual would receive rehabilitative treatment were the indictment issued under Chapter 12.

Not only are we unwilling to lend our imprimatur to such capricious distinctions, we are satisfied from our review of the legislature's activities in the area that the legislature's manifest intent is to invest the courts with discretion in imposing sentence not only under AS Title 17, Chapter 12, but also, by analogy therewith, under AS Title 17, Chapter 10. In short, we hold that the provisions of AS 12.55.080 and AS 12.55.085(a) do apply to violations of AS Title 17, Chapters 10 and 12, and that the two-year minimum sentence requirement of AS 17.10.200(d) has thus been implicitly repealed as contrary to more recent expressions of legislative intent.

In light of our holding and the recommendations of the probation officer's report, we are satisfied that the sentence imposed in this case was excessive. Accordingly we remand to the trial court for a review of the sentence imposed.

Remanded for further proceedings consistent with this opinion.

FITZGERALD, J., not participating.

14. 3 Sutherland, Statutory Construction § 6102, 157–59, (3d Ed. 1943), and cases cited therein.

15. *Compare* AS 17.10.230(10)–(13) *with* AS 17.12.150(3)–(4). It should be noted that Speas was convicted of illegal use of morphine, which is not included in the definition of depressant, hallucinogenic and stimulant drugs set forth in AS 17.-12.150. (The commissioner, of course, may so designate it by regulation under Subparagraph (3)(D).) Accordingly, the indictment against Speas could not have been issued at the option of the district attorney under Chapter 12, and we are not to be misconstrued as suggesting otherwise. To reiterate the text, the rehabilitation provisions of Chapter 12 are applied to this case on the basis of analogy only.