**Sterling M. JACKSON, Appellant,**

v,

**STATE of Alaska, Appellee.**

**No. A-2987.**

Court of Appeals of Alaska.

May 11, 1990.

Sen K. Tan, Susan Orlansky, Asst. Public Defenders, and John B. Salemi, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

PER CURIAM.

Sterling M. Jackson pled no contest and was convicted of one count of misconduct involving a controlled substance in the fourth degree, cocaine, a class C felony, AS 11.71.040(a)(3)(A). Jackson reserved the right to appeal the trial court's denial of his

motion to to suppress. *See Cooksey v. State,* 524 P.2d 1251 (Alaska 1974). We reverse.

Anchorage Police Officer Matthew Dahl was on routine patrol near 27th and Arctic in Anchorage on September 24, 1988, at 8:05 a.m. Officer Dahl observed Jackson walking along Arctic. Upon recognizing Jackson, Officer Dahl ran a warrant check and was informed that Jackson had an outstanding failure to appear warrant. Officer Dahl did not know at the time of the arrest the underlying charges for the warrant which were shoplifting and driving while license suspended. Officer Dahl exited his car, arrested and handcuffed Jackson. Officer Dahl then searched Jackson for weapons.

Officer Dahl located a wallet approximately three inches by two inches by one-half inch in Jackson's left-breast pocket. He stated he had found razor blades, stiletto-type knives, and small sheath knives that would fit in a wallet this size. After removing the wallet, he opened it looking for the type of weapons described. In the middle of the wallet, he discovered a small baggie of white powder. The white powder was tested and was found to be .17 grams of cocaine. Officer Dahl kept the baggie and returned the wallet to Jackson. Officer Dahl testified that he does this type of search for anyone he is going to transport, not only for his safety but for the safety of other law enforcement personnel down the line.

Officer Dahl also testified that he had stopped Jackson five to ten times on prior occasions and arrested him on about half of those occasions. He indicated that Jackson had never had any concealed weapons on his person. Officer Dahl stated he believed those arrests to be for shoplifting, but did have some knowledge of Jackson's history with drugs.

Superior Court Judge Karl S. Johnstone found that the state had proven by a preponderance of the evidence that the search of Jackson was incident to a lawful warrant arrest and was solely for the purpose of locating weapons. Judge Johnstone indicated that razor blades or a small stiletto or sheath knife were weapons that could be located in a wallet of the size described by Officer Dahl. Based on these findings, Judge Johnstone denied Jackson's motion to suppress.

## DISCUSSION

In this case, Officer Dahl relied on a warrant to arrest Jackson, but had no search warrant. He conducted a warrantless search of Jackson's person and discovered contraband. The fourth amendment to the United States Constitution and article 1, section 14 of the Alaska Constitution bar unreasonable searches and seizures. A warrantless search is *per se* unreasonable unless it falls within an exception to the warrant requirement. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Deal v. State,* 626 P.2d 1073, 1078 (Alaska 1980).

A search of a person incident to an arrest is a recognized exception to the search warrant requirement. *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476–77, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida,* 414 U.S. 260, 264, 94 S.Ct. 488, 491, 38 L.Ed.2d 456 (1973); *Hinkel v. Anchorage,* 618 P.2d 1069, 1070 (Alaska 1980), *cert. denied,* 450 U.S. 1032, 101 S.Ct. 1744, 68 L.Ed.2d 228 (1981); *Middleton v. State,* 577 P.2d 1050, 1055 (Alaska 1978); *Zehrung v. State,* 569 P.2d 189, 195 (Alaska 1977), *modified on rehearing,* 573 P.2d 858 (Alaska 1978); *McCoy v. State,* 491 P.2d 127, 130–31 (Alaska 1971); *Dunn v. State,* 653 P.2d 1071, 1079 (Alaska App.1982).

In *McCoy,* the supreme court placed four restrictions on warrantless searches of the person incident to arrest: that the arrest be valid; that the search be roughly contemporaneous with the arrest; that the arrest not be a pretext for the search; and, that the arrest must either be for a crime, evidence of which could be concealed on a person or the search must be intended for the discovery of a weapon to prevent injury to the officer or the arrestee's effectuating his or her escape. 491 P.2d at 138. In this case, Jackson concedes that the arrest was valid, that the search was roughly contemporaneous with the arrest, and that the

arrest was not a pretext for the search. The state concedes that the arrest was not for a crime, evidence of which could be concealed on a person. Rather, it is argued, it was a weapons search.

Officer Dahl testified, and the trial court found his testimony credible, that the search was to discover small weapons such as a razor blade or a small knife, and that such a weapon could be concealed in a wallet the size of Jackson's. Such a search would appear permissible "unless the container [*i.e.*, the wallet] is too small to contain a weapon." *Hinkel*, 618 P.2d at 1070. Jackson vigorously argues that his wallet was too small to contain the kind of weapon for which searches incident to an arrest are permitted.

The Alaska cases cited all involved searches for conventional weapons such as guns, large knives, and clubs. In order to resolve this case, it is necessary to consider the scope of a search for unconventional or atypical weapons incident to an arrest under Alaska law. While there is *dicta* in prior cases addressing this issue, it is one of first impression. It is important to note at the outset that Jackson was subjected to a full custodial arrest, which we define as one where the arrestee is taken into custody and transported to a police facility for booking. *See Robinson*, 414 U.S. at 222 n. 2, 94 S.Ct. at 470 n. 2. This is not a case of an investigatory stop followed by a frisk for weapons permitted by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In *Robinson*, the United States Supreme Court dealt with a search of a person arrested for a minor offense, evidence of which would not be found on his person. 414 U.S. at 236, 94 S.Ct. at 477. The officer also indicated that he was not searching for weapons nor did he suspect that the respondent was armed. *Id.* The arresting officer found contraband in a cigarette package removed from the arrestee's pocket. After reviewing past authorities, the Supreme Court permitted a virtually unlimited search for weapons once a person is validly taken into custody. The Court said:

The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*Id.* at 235, 94 S.Ct. at 477. Three justices of the Supreme Court dissented in *Robinson* in an opinion authored by Justice Marshall. Justice Marshall rejected the bright-line rule adopted by the majority. He reasoned that the fourth amendment required a case-by-case determination by a neutral judge of the reasonableness of any searches and seizures conducted by the police. Such a determination, in Justice Marshall's view, required a careful evaluation of the particular circumstances in order to adjudicate the reasonableness of the officers' actions. 414 U.S. at 239, 94 S.Ct. at 478.

Justice Marshall began his analysis with the Supreme Court's prior judgment in *Terry*, where the court held that the reasonable suspicion justifying an investigatory stop did not automatically justify a search of the person of the detainee. "The scope of [any] search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry*, 392 U.S. at 19, 88 S.Ct. at 1878. It was only where the officer had a reasonable basis for concluding that the detained person was armed and dangerous that a frisk limited to a pat-down of the person's outer clothing was permissible. In contrast, Justice Marshall determined a custodial arrest would authorize a frisk of the suspect's

outer clothing in order to remove any weapons the suspect may have in his possession, without a preliminary determination that the arrestee was armed and dangerous. In Justice Marshall's mind, there was a serious question as to whether the officer could go further and remove unknown objects from the arrestee's pockets. He noted that Robinson had been cooperative and that there was no reason to believe that he was armed and dangerous. *Robinson*, 414 U.S. at 253, 94 S.Ct. at 485. Justice Marshall continued:

> While this difference between the situation presented in *Terry* and the context presented in this case would tend to suggest a lesser authority to search here than was permitted in *Terry*, other distinctions between the two cases suggests just the opposite. As the Court of Appeals noted, a crucial feature distinguishing the in-custody arrest from the *Terry* context, " 'is not the greater likelihood that a person taken into custody is armed, but rather the increased likelihood of danger to the officer if in fact the person is armed.' " A *Terry* stop involves a momentary encounter between officer and suspect, while an in-custody arrest places the two in close proximity for a much longer period of time. If the individual happens to have a weapon on his person, he will certainly have much more opportunity to use it against the officer in the in-custody situation. The prolonged proximity also makes it more likely that the individual will be able to extricate any small hidden weapon which might go undetected in a weapons frisk, such as a safety pin or razor blade. In addition, a suspect taken into custody may feel more threatened by the serious restraint on his liberty than a person who is simply stopped by an officer for questioning, and may therefore may be more likely to resort to force.

*Id.* Justice Marshall concluded that no bright-line rule was possible and that each case must be decided on its own facts. In his view, it was unnecessary to balance the harmlessness of Robinson as an individual against the risk from arrestees, in general, in order to properly determine the case.

*Id.* at 254, 94 S.Ct. at 485–86. He reached this conclusion because he was convinced that the cigarette package removed from Robinson's pocket by the officer should have been impounded and, if impounded, no further risk to the officer would have been present. *Id.* at 257–59, 94 S.Ct. at 487–88.

The Alaska Supreme Court had occasion to consider *Robinson* and rejected the bright-line rule it adopted. *See Middleton*, 577 P.2d at 1055; *Zehrung*, 569 P.2d at 197–200. In *Zehrung*, the court stated that under article 1, section 14 of the Alaska Constitution, governmental intrusions into the personal privacy of Alaska citizens including those subject to a custodial arrest must be limited in scope to that degree necessary under the particular circumstances. 569 P.2d at 199. The court relied on *State v. Kaluna*, 55 Haw. 361, 520 P.2d 51 (1974) and *People v. Brisendine*, 13 Cal.3d 528, 119 Cal.Rptr. 315, 531 P.2d 1099 (1975). In differentiating the Alaska rule from the federal rule, the court gave primary consideration to the requirement that warrantless searches incident to an arrest other than for weapons must be limited to occasions where evidence of the offense could be concealed on the person. *Zehrung*, 569 P.2d at 199–200. In a footnote, the court made one significant comment:

> A warrantless search for weapons is permissible when one is arrested and taken into custody. However, as to the permissible extent and limitations on the scope of such warrantless search, *see People v. Brisendine*, 531 P.2d at 1107–09. *See also, People v. Collins*, 1 Cal.3d 658, 83 Cal.Rptr. 179, 463 P.2d 403, 406–08 (1970).

*Zehrung*, 569 P.2d at 199–200 n. 39.

The Supreme Court of California dealt with an investigatory stop where the investigating officer did not have probable cause to arrest in *Collins*. The court expressed concern as to whether there was a sufficient reasonable suspicion to warrant an investigatory stop, but in light of its decision that in any event an unreasonable search had occurred, did not decide that issue. 463 P.2d at 405. In reliance on

*Terry,* 392 U.S. at 16, 88 S.Ct. at 1877, the court held:

> [I]n searching a legally detained individual reasonably suspected of being armed, a police officer must be limited to "a careful exploration of the outer surfaces of [the] person's clothing until and unless he discovers specific and articulable facts reasonably supporting his suspicion. Only then may an officer exceed the scope of a pat-down and reach into the suspect's clothing for the limited purpose of recovering the object thought to be a weapon. As with other searches without warrants, the burden of pointing to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" such intrusion properly rests with the People.

> Feeling a soft object in a suspect's pocket during a pat-down, absent unusual circumstances, does not warrant an officer's intrusion into a suspect's pocket to retrieve the object. A pat-down must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." The obvious purpose of holding that officers cannot go beyond exploration of the surfaces of a suspect's clothing without being "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that [additional] intrusion" is to ensure that the scope of such a search cannot be exceeded at the mere discretion of the officer, but only upon discovery of tactile evidence particularly tending to corroborate suspicion that the suspect is armed. To permit officers to exceed the scope of a lawful pat-down whenever they feel a soft object by relying upon mere speculation that the object might be a razor blade concealed in a handkerchief, a "sap," or any other atypical weapon would be to hold that possession of any object, including a wallet, invites a plenary search of an individual's person. Such a holding would render meaningless *Terry*'s requirement that pat-downs be limited in scope absent articulable grounds for an additional intrusion.

> Accordingly, we hold that an officer who exceeds a pat-down without first discovering an object which feels reasonably like a knife, gun, or club must be able to point to specific and articulable facts which reasonably support a suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down. Only then can judges satisfy the Fourth Amendment's requirement of a neutral evaluation of the reasonableness of a particular search by comparing the facts with the officer's view of those facts. Thus, for example, an officer who believes a soft object is a "sap" in the form of a small bag of sand must be able to point to its weight and consistency to justify an intrusion into the suspect's pocket. "To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice".

*Collins,* 463 P.2d at 406–07, (citations omitted).

In *Collins,* the supreme court specifically disapproved *People v. Armenta,* 268 Cal. App.2d 248, 73 Cal.Rptr. 819 (1968) where the California Court of Appeals approved removal of a small, hard package from a detainee's pocket and reasoned that the suspect might have had a "rubber water pistol loaded with carbolic acid or some other liquid, which if used by a suspect could permanently blind an officer." *Collins,* 463 P.2d at 407 (quoting *Armenta,* 73 Cal.Rptr. at 821). The supreme court found this reasoning suspect because it would permit officers to exceed the scope of a pat-down search upon discovering any object on a suspect's person. *Id.*

In *Brisendine,* the Supreme Court of California applied *Collins* to a situation that approached a custodial arrest. Brisendine was arrested for an offense that would normally have resulted in a citation. The arrest occurred at a remote camping site, however, and it was necessary for the arrestee and his companions to accompany the police officers on an extended hike back to the police officers' car. *Brisendine,* 531

P.2d at 1107. Consequently, the court concluded that even though there were no articulable facts suggesting that this particular arrestee was armed and dangerous, the circumstances justified a limited pat-down of the surface of the arrestee's clothing as well as any of his effects that would have to accompany him on the trip back to the police car. *Id.* at 1106. Since the court concluded that a pat-down of the arrestee's knapsack was insufficient to ensure that it did not contain a gun, knife, club, or other hidden instrument of assault, it concluded that the officers were justified in protecting themselves by looking into the interior of the knapsack for weapons. *Id.* at 1108. When the officer looked into the knapsack, he found a frosted opaque plastic bottle and a pair of envelopes. These were searched, and contraband was found. The court held that this was an impermissible search for weapons. The court said:

> Nor can the Peoples' burden be discharged by the assertion that the bottle and envelopes might possibly contain unusual or atypical weapons.... "[A]n officer who exceeds a pat-down without first discovering an object which feels reasonably like a knife, gun, or club must be able to point to specific and articulable facts which reasonably support a suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down."

> ....

> Typically in cases of warrantless weapons searches the police must be able to point to specific and articulable facts which reasonably justify a belief that the suspect is armed. In the ordinary citation situation the fact of the arrest alone will not supply this justification and additional facts must be shown. In the case of transportation in the police vehicle, however, or in the analogous circumstances here, the necessity of close proximity will itself provide the needed basis for a protective pat-down of the person. To intrude further than a pat-down, the officer must provide additional specific

and articulable facts necessitating the additional intrusion.

*Id.* at 1108–09 (citations omitted).

We have discussed *Collins* and *Brisendine* at some length because the Supreme Court of Alaska in *Zehrung* specifically directed our attention to those cases. *Zehrung*, like Jackson's circumstances, involved a custodial arrest.

Appellate cases decided by Alaska courts are consistent with the limitations established in *Collins* and *Brisendine*. In *McCoy*, *Hinkel*, and *Dunn*, searches of the person of the arrestee and jackets and purses associated with the person of the arrestee all involved items large enough to hold conventional weapons. No Alaska appellate decision has permitted a search of a container so small that it could hold only a razor blade, small pen knife, needle, or safety pin. *Middleton* permitted a search of the arrestee's wallet because she was arrested for a crime, armed robbery, of which evidence could be concealed in a wallet. 577 P.2d at 1055. McCoy was charged with forgery. The court permitted the search of a small packet wrapped in aluminum foil and covered with plastic found in his jacket pocket because evidence of forgery could have been concealed on his person. 491 P.2d at 139.

We therefore conclude that a search incident to an arrest, where no evidence of the crime charged could exist on the person, may extend to the person of the arrestee and any containers associated with the arrestee's person which may contain a gun, a large knife, or a club. Search of smaller containers which could only contain atypical weapons such as a razor blade, a small knife, a safety pin, or a needle must be supported by specific and articulable facts which would lead a reasonable person to believe that such an atypical weapon was in the small container. If *Zehrung* requires that people arrested for minor crimes and transported—to the police station must be shielded from full inventory searches until they have had an opportunity to post bail, it necessarily follows that they must likewise be shielded from full searches incident to their arrest in the absence of compelling

circumstances, otherwise the protections of *Zehrung* would be eroded.

Having reviewed applicable law, we are now able to discuss the facts of this case. We stress that under Alaska law, unlike federal law, each warrantless search for weapons incident to arrest must be considered and justified on its own facts. When we examine the search in this case, we are satisfied that the search of Jackson's wallet was not justified. First, we note that Officer Dahl knew Jackson and had arrested him on a number of prior occasions. On each occasion, the arrest was for a nonviolent crime. Officer Dahl had searched Jackson on a number of occasions and never found an atypical weapon. Officer Dahl's search of Jackson's person uncovered no weapons. Jackson's wallet was too small to conceal anything but an atypical weapon. Officer Dahl could point to no specific and articulable facts which would reasonably support a suspicion that Jackson was armed with an atypical weapon or that his wallet contained such a weapon. Under the circumstances, the trial court erred in denying Jackson's motion to suppress.

The judgment of the superior court is REVERSED.

BRYNER, C.J., concurs.

SINGLETON, J., dissents.

BRYNER, Chief Judge, concurring.

In rejecting *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and electing to follow the course taken by the Hawaii Supreme Court in *State v. Kaluna*, 55 Haw. 361, 520 P.2d 51 (1974), and by the California Supreme Court in *People v. Brisendine*, 13 Cal.3d 528, 119 Cal.Rptr. 315, 531 P.2d 1099 (1975), the Alaska Supreme Court went to great pains in *Zehrung v. State*, 569 P.2d 189 (Alaska 1977), to assure that searches incident to arrest be circumscribed by the principle of particularized need:

> [I]n our view, the right to be 'secure ... against unreasonable searches and seizures,' under art. I, § 14 of the Alaska Constitution, requires that governmental intrusions into the personal privacy of Alaska citizens be limited in scope to that degree necessary under the particular circumstances.

*Zehrung*, 569 P.2d at 199 (footnote omitted).

To implement the protections inherent in art. I, § 14 of the Alaska Constitution, *Zehrung* held:

> [A]bsent specific articulable facts justifying the intrusion ..., a warrantless search incident to an arrest, other than for weapons, is unreasonable and therefore violative of the Alaska Constitution if the charge on which the arrest is made is not one, evidence of which could be concealed on the person.

*Id.* at 199–200 (footnote omitted).

This conclusion was based in part on *People v. Superior Court of Los Angeles County*, 7 Cal.3d 186, 101 Cal.Rptr. 837, 496 P.2d 1205 (1972), which, according to the *Zehrung* court, held that the search incident to arrest exception would not justify a warrantless search for evidence when an arrest was "for an offense which typically has neither instrumentalities nor fruits." *Id.* at 199. While the *Zehrung* court recognized that a search for weapons is permissible in such cases, it emphasized that the search must be reasonably limited in its intensity and intrusiveness. Referring again with approval to *People v. Superior Court of Los Angeles County*, the court noted that "a pat-down, or limited search for weapons, is permissible ... if the arrestee is taken into custody." *Id.* at 199 (footnote omitted).

What constitutes a "limited search" for weapons under *Zehrung* must be determined by the principles espoused in that case. Just as a person may not be searched for evidence when arrested for a crime "which typically has neither instrumentalities nor fruits," so that person should not, without articulable basis, be subjected to a search for weapons that delves into articles and areas that would typically contain no weapon. *Zehrung* compels the conclusion that the search incident to arrest exception does not permit an article such as a wallet to be searched for

uncommonly small weapons "unless there are particular facts present which would lead the officer to believe the arrestee is armed." *Id.* at 199.[1]

A contrary reading of *Zehrung* would effectively nullify its holding. For it would be utterly meaningless to say, in one breath, that one's wallet may never be searched for evidence when the search is incident to an arrest for a crime in which no evidence would typically be found, while saying, in the next, that the wallet may always be searched for safety pins, razor blades, and miniature switchblade knives. If the court in *Zehrung* had intended such a result, it would simply have followed the United States Supreme Court's ruling in *United States v. Robinson. Robinson*'s bright-line approach may have its advantages. Even if we were inclined to follow *Robinson,* however, we would have no authority to overrule *Zehrung.*

SINGLETON, Judge, dissenting.

Officer Dahl testified, and the trial court found, that he searched Jackson's wallet for a weapon such as a razor blade or a small knife. Officer Dahl testified that in the past he had found such weapons in wallets as small as Jackson's. It is undisputed that Jackson's wallet was associated with his person. Under the circumstances, such a container may be seized, opened, and searched incident to the arrest unless the container is too small to contain a weapon. *Hinkel v. Anchorage,* 618 P.2d 1069, 1070 (Alaska 1980). *See McCoy v. State,* 491 P.2d 127 (Alaska 1971). Whether the container was too small to contain a weapon of the kind described by Officer Dahl was a question of fact. It does not appear that Judge Johnstone's conclusion was clearly erroneous.

The majority has adopted a requirement that officers must have reason to know a wallet contains a razor blade before they can search for one. This test is unworkable. As Justice Marshall recognizes in his dissent in *Robinson,* a frisk of the person or even, by extension, a pat-down of the wallet itself will not always disclose the presence of a razor blade. 414 U.S. at 253, 94 S.Ct. at 485. Thus, under the test adopted by the majority, an officer will never be justified in searching for razor blades, safety pins, needles, or small knives. Such a rule endangers arresting officers required to transport those they arrest without, in any significant way, protecting the privacy of those they arrest.

In evaluating the appropriate scope of a weapon's search incident to an arrest, I am satisfied that Professor LaFave is correct when he says:

> In discussing searches for evidence, it was noted that if an evidentiary search need not be limited to predetermined objects it would be extremely difficult to impose practical limits upon the scope of the search. Somewhat the same problem exists here. The purpose of the search, in the words of the Supreme Court in *Robinson,* is to find "any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape." "Any weapons," it would seem, is not limited to bulky guns and knives which could be readily detected in a patdown, nor to those weapons to which the arrestee has immediate access in the outer areas of his clothing. As even the *Robinson* dissenters acknowledge:
>
> > If the individual happens to have a weapon on his person, he will certainly have much more opportunity to use it against the officer in the in-custody situation [than in a *Terry* type of case]. The prolonged proximity also makes it more likely that the individual will be able to extricate any small hidden weapon which might go undetected in a weapons frisk, such as a safety pin or razor blade. In addition, a sus-

1. Nothing in *Hinkel v. Anchorage,* 618 P.2d 1069 (Alaska 1980), is to the contrary. *Hinkel* prohibits the search incident to arrest of articles that are not closely associated with the person of the arrestee; conversely, it permits articles closely associated with the person to be searched for weapons incident to arrest. But nothing in *Hinkel* suggests that articles associated with the person are subject to a search of limitless intensity, unsupported by any articulable grounds, for minute and uncommon weapons.

pect taken into custody may feel more threatened by the serious restraint on his liberty than a person who is simply stopped by an officer for questioning, and may therefore be more likely to resort to force.

If, then, under the *Terry* rule, "an officer may not remove an object from the suspect's pockets unless he has reason to believe it to be a dangerous weapon," the limitation is unduly strict in the case of a weapons search incident to arrest. Rather, it would seem that an object not clearly identifiable as something other than a "small hidden weapon" must be amenable to further inspection. And if the object is a container which might have some kind of weapon within it, it seems reasonable that the officer should look inside the object, as the Supreme Court appears to have decided in *Peters v. New York,*ᐧ [392 U.S. 40, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968) ].¹ The alternative, requiring the officer to retain all such objects without inspecting them, is less than practicable.

If the "general authority" to search an arrestee for weapons must extend this far, then it is very doubtful whether any realistic intensity limitation upon such searches is feasible. Moreover, any such limitation would appear to be of little significance whenever the searching activity may be justified upon additional grounds such as to obtain evidence or to ensure the security of a custodial facility.

2 W. LaFave, *Search and Seizure* § 5.2(d), at 454–55 (2d ed. 1987) (footnotes and citations omitted).

LaFave offers some reasons for rejecting Justice Marshall's suggestion that small containers possibly holding atypical weapons could merely be seized rather than searched to protect the officer from violent attack.

> This alternative "position would require the officer to retain all confiscated containers in his own possession throughout the trip to the stationhouse following a custody arrest. In a typical street encounter a single officer might well have to cope with wallets, purses, cigarette packages, envelopes, and a myriad of other items. Moreover, should officers other than the arresting policeman provide transportation to the stationhouse, this procedure would require some potentially cumbersome system of accountability to guard the police against claims of loss."

*Id.* at 455 n. 81 (citation omitted).

It is clear that the Supreme Court of Alaska has rejected seizure of small containers associated with the person as an alternative to their search. *Hinkel,* 618 P.2d at 1071–73; *Middleton,* 577 P.2d at 1055; *McCoy,* 491 P.2d at 133–34.

I would AFFIRM the judgment of the superior court.²

---

**1.** *Peters* is cited with approval in *McCoy,* 491 P.2d at 135–36.

**2.** I recognize that Jackson was a nonviolent offender arrested for a nonviolent offense. LaFave, in addressing this issue states:

> [I]t is well to remember that in a particular case a policeman is not dealing with a class of offenders, but rather with one particular offender, and when that person "stands before the officer, he contains a potential for danger, quantum unknown." The fact that it may be fair to assume that traffic offenders, as a class, are not as frequently armed as burglars really tells the officer nothing about whether

> defendant [x] poses a greater or lesser risk than defendant [y]. And to expect the arresting officer to somehow divine which traffic offenders are most likely to be armed by reference to some "special circumstances," such as "furtive movements," seems highly unrealistic and impracticable. In short, the justification for a protective search "is not the greater likelihood that a person taken into custody is armed, but rather the increased likelihood of danger to the officer *if* in fact the person is armed.

2 W. LaFave, *Search and Seizure* § 5.2(e), at 456–57 (2d ed. 1987) (citations omitted) (emphasis in original).