**Everett Leon JONES, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–7328.**

Court of Appeals of Alaska.

Nov. 3, 2000.

---

Douglas O. Moody, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

The police responded to a 911 call that reported an argument between a tenant and a landlord. When they arrived at the scene, the police separated the landlord and the tenant and began to question them individually about the dispute. When the tenant, Everett Leon Jones, attempted to walk away from the officers, they restrained him. When Jones began to resist, he was handcuffed. He continued to resist the officers, who ultimately searched him, finding cocaine.

Jones was charged with possession of cocaine and resisting arrest. The question presented by this case is whether the police could lawfully restrain Jones at the scene of the dispute. We conclude that they could not, and that the cocaine that the police obtained as a result of the illegal restraint must be suppressed. We therefore reverse Jones's conviction for misconduct involving a controlled substance in the fourth degree. In addition, we remand Jones's conviction for resisting arrest for further findings.

On July 20, 1998, in response to a 911 call, officers from the Anchorage Police Department arrived at the scene of a reported disturbance between a tenant and landlord. Officer Ryan McNamara arrived first. He heard yelling from inside the building, but remained outside. Soon, another officer arrived, and together they entered the building. Inside, they saw a man and woman arguing in the hallway. The man was later identified as Everett Jones; the woman as Lola Strzelewicz, his landlord.

As the officers walked into the hallway, Jones moved away from Strzelewicz and attempted to pass by Officer McNamara. Officer McNamara stopped Jones and asked him to step outside so that he could talk to Jones about the disturbance. Jones replied that he needed to go to his room down the hall. Officer McNamara then ordered Jones to step outside. He told Jones that he could go to his room after McNamara had figured out what had happened. McNamara later testified that Jones was not free to go at that time.

Jones and McNamara went outside, and Jones began telling McNamara what had happened. Jones was wearing a fanny pack so that the pouch was in front; as Jones was talking, he put his hand into the fanny pack. McNamara ordered Jones not to do that, and Jones quickly took his hand out of the fanny pack.

Jones then said that he had to go lean some bicycles up against another side of the house, and began briskly walking away from McNamara. McNamara stood in his way. Jones stopped and put his hand inside his fanny pack. McNamara ordered Jones to take his hand out of his fanny pack and put

his hands behind his back so that McNamara could handcuff him. Jones refused.

McNamara and another officer then handcuffed Jones. McNamara decided to pat search Jones for weapons. McNamara asked Jones if Jones had any weapons on him. Jones said he did not. McNamara first examined the fanny pack. There, he found a small pocket knife and a "razor blade style box cutting knife," which had a razor blade mounted in it. McNamara then patted Jones's right side. McNamara found a small pocket knife in Jones's right front pocket.

As McNamara patted Jones's right side, Jones, while handcuffed, began reaching for his left front pocket. The officers told Jones to stop reaching for his pocket, but Jones did not. The officers pushed Jones up against the wall and attempted to examine Jones's left front pocket.

As the officers continued to attempt to search Jones, Jones continued to twist, kick, and struggle. He continued to struggle even though three officers were holding him. After a protracted struggle, the officers were able to search Jones's left pocket, and found a plastic bag containing crack cocaine.

The state charged Jones with misconduct involving a controlled substance in the third degree (possessing cocaine with the intent to deliver) a class B felony, and resisting arrest, a class A misdemeanor.[1] Jones filed a motion to suppress the cocaine on the ground that the police seized the cocaine illegally by conducting an illegal investigative stop. Superior Court Judge Larry D. Card denied this motion.

Jones then proceeded to trial in a court trial before Judge Card. Judge Card acquitted Jones of misconduct involving a controlled substance in the third degree, finding that the state had not presented sufficient evidence that Jones intended to distribute the cocaine, but he convicted Jones of the lesser-included offense of possession of co-caine, misconduct involving a controlled substance in the fourth degree, a class C felony. He also convicted Jones of resisting arrest. Jones now appeals these convictions.

■ In *Coleman v. State*,[2] the Alaska Supreme Court held that investigative stops are permitted only in "cases where the police officer has a reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred."[3]

The state relies on *State v. G.B.*,[4] for the proposition that Alaska's courts use a flexible approach in balancing the seriousness and recency of a suspected crime and the strength of the officers' suspicion against the intrusiveness of the stop. It is true that *G.B.* held that there were no pre-established classes of crime limiting police authority to make an investigative stop: "A minimally intrusive stop based on solid information indicating that a crime is actually in progress or has just been completed may be justified under *Coleman* even when the crime itself is not a felony and involves harm that in other contexts might not seem particularly serious."[5]

But in Jones's case, although the police knew that Jones was involved in a dispute with his landlord, they had no indication that Jones had assaulted the landlord or had committed any illegal act. Accordingly, there was no basis for Officer McNamara to require Jones to stay at the scene and talk to him, and therefore, the cocaine that the police later found was seized as the result of an illegal investigative stop. We therefore conclude that Judge Card should have granted Jones's motion to suppress this evidence.

Jones concedes that, under Alaska law, even if the police arrested him illegally, he had no right to resist the arrest.[6] However, Jones argues that there was insufficient evidence to convict him of resisting arrest.

The relevant statute provides that "[a] person commits the crime of resisting or inter-

---

1. AS 11.71.030(a)(1); AS 11.56.700(a)(1).

2. 553 P.2d 40 (Alaska 1976).

3. *Id.* at 46.

4. 769 P.2d 452 (Alaska App.1989).

5. *Id.* at 456.

6. *See Miller v. State*, 462 P.2d 421 (Alaska 1969); *Jurco v. State*, 825 P.2d 909, 911–15 (Alaska App.1992).

fering with arrest if, knowing that a peace officer is making an arrest [and] with the intent of preventing the officer from making the arrest, the person resists ... arrest ... by force."[7] Jones admits that he knew that the officers were peace officers and that he struggled. But he contends that the state did not prove either that the officers were making an arrest at the time he was resisting, or that Jones knew this and intended to prevent the officers from making the arrest.

■ Judge Card found that Jones resisted the police and this finding is clearly supported by the record. But Jones initially resisted an investigative stop and later a search. There is no evidence that Jones was ever told that he was under arrest. Although it is not invariably necessary for the state to prove that a person was explicitly told that he was under arrest in order to prove that the person knew that he was under arrest, the state must prove that the defendant was otherwise aware of the arrest. It is unclear when the police actually arrested Jones, and for what. In order to convict Jones of resisting arrest, the state had to prove that the police were arresting Jones, that Jones knew the officers were arresting him, and that Jones used force with the intent to prevent the officers from making the arrest. Since Judge Card's findings did not focus on these elements, and the existence of these elements is not obvious from the record, we conclude that we should remand this case to Judge Card for further findings.

The case is remanded to the superior court. On remand, the court shall dismiss the charge of misconduct involving a controlled substance in the fourth degree. The court shall, within sixty days, reconsider and make additional findings on the charge of resisting arrest. In the event that the superior court makes findings convicting Jones of this offense, the parties will have thirty days after the issuance of those findings to submit memoranda addressing those findings to this court. We retain jurisdiction.

7. AS 11.56.700(a)(1).

REVERSED in part, REMANDED in part.