**Michael Travis MILLER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–9484.**

Court of Appeals of Alaska.

Oct. 20, 2006.

---

Kathleen A. Murphy, Assistant Public Defender, and Quinlan G. Steiner, Public Defender, Anchorage, for the Appellant.

Tamara E. de Lucia, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

A police officer pulled over the vehicle Michael Travis Miller was driving based on a report that Miller had been involved in a "verbal domestic dispute." When the officer contacted Miller, he observed signs that Miller was intoxicated and asked him to submit to a breath test. Miller refused and was ultimately convicted of refusal to submit to a chemical test.

Miller argues that this stop was illegal and that the district court should have suppressed the evidence against him. Having reviewed the record, we agree that the officer who stopped Miller had no objective basis to believe that the reported argument had led, or would lead, to a crime. We therefore conclude that the investigative stop was not supported by reasonable suspicion and reverse Miller's conviction.

*Facts and proceedings*

On July 13, 2005, at about 12:30 a.m., a woman called 911 emergency to report that a man and a woman were arguing in the parking lot of Henry's Bar in Juneau. The caller said the two were not physically fighting but were standing near the open doors of a white Subaru arguing and waving their arms. When asked to describe the individuals, the caller said the woman had blonde hair and the man was wearing a hat and was about one and one-half feet taller than the woman. She did not know if the two were a couple or perhaps brother and sister.

Juneau Police Officer Keith Mickelsen, who happened to be nearby, was dispatched to a "verbal 10–16"—that is, a verbal domestic dispute. The dispatcher described the individuals, the vehicle, and the location, but provided no other details. As Officer Mickel-

sen neared the parking lot of Henry's Bar, he saw people getting into a white Subaru. The Subaru drove past Officer Mickelsen as he entered the parking lot. Officer Mickelsen could see that there were three people in the car, including the driver, but he could not see the passengers distinctly enough to tell if anyone was in need of assistance.

Officer Mickelsen activated his overhead lights and stopped the Subaru. He contacted the driver, Miller, and asked him about the argument in the parking lot. He also asked if anyone in the vehicle needed help; the two women passengers shook their heads to indicate that they did not. Upon contacting Miller, Officer Mickelsen observed that he had watery, bloodshot eyes and an odor of alcohol, so he began to investigate whether Miller was intoxicated. Ultimately, Miller was arrested for driving while under the influence,[1] refusal to submit to a chemical test,[2] and two counts of reckless endangerment[3] for putting his passengers at risk by driving while under the influence.

Before trial, Miller moved to suppress the evidence acquired as a result of the stop, arguing that the stop was illegal. At an evidentiary hearing, the State presented the testimony of Officer Mickelsen and the recordings of the 911 call and the police dispatch. After hearing this evidence, District Court Judge Keith B. Levy denied Miller's motion, finding the facts "sufficient to establish a substantial possibility that a domestic violence assault was occurring, had occurred, or was about to occur." Miller then pleaded guilty to refusal to submit to a chemical test, reserving his right to challenge the denial of his motion to suppress.[4] The State dismissed the other charges.

Miller appeals.

*Discussion*

*Was Miller's stop illegal?*

The parties agree that Miller was subjected to an investigative stop. The only dispute is whether, under the facts of this case, the report of a verbal argument provided reasonable suspicion to stop Miller's vehicle.

An investigative stop is permitted if an officer has "reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred."[5] Alaska courts take a flexible approach in evaluating whether a stop is supported by reasonable suspicion, balancing the seriousness and recency of the suspected crime and the strength of the officer's suspicion against the intrusiveness of the stop.[6] The ultimate inquiry is whether the detaining officer, in light of all the circumstances, had "a particularized and objective basis for suspecting the particular person stopped of criminal activity."[7]

Officer Mickelsen stopped Miller based solely on the dispatcher's report of a "verbal 10–16"—that is, a verbal domestic disturbance. We have previously held, in *Jones v. State*,[8] that a verbal argument, standing alone, does not justify a detention. In *Jones*, the police responded to a 911 call reporting a disturbance between a tenant and a landlord.[9] When the officers arrived on the scene, they heard yelling from inside the building and found Jones arguing with a woman in the hallway.[10] One of the officers

1. AS 28.35.030(a)(1).

2. AS 28.35.032(a).

3. AS 11.41.250(a).

4. *Cooksey v. State*, 524 P.2d 1251, 1255–57 (Alaska 1974).

5. *Coleman v. State*, 553 P.2d 40, 46 (Alaska 1976).

6. *Jones v. State*, 11 P.3d 998, 1000 (Alaska App. 2000) (citing *State v. G.B.*, 769 P.2d 452, 456 (Alaska App.1989)).

7. *State v. Moran*, 667 P.2d 734, 735 (Alaska App. 1983) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).

8. 11 P.3d 998 (Alaska App.2000).

9. *Id.* at 999.

10. *Id.*

ordered Jones outside and questioned him.[11] When Jones tried to cut off the questioning and leave, the officer prevented him from doing so.[12] Eventually, Jones was handcuffed and searched for weapons.[13] During that search, the police discovered crack cocaine.[14]

We concluded that Jones's detention was illegal because the police had no reason to believe he had committed a crime:

> [A]lthough the police knew that Jones was involved in a dispute with his landlord, they had no indication that Jones had assaulted the landlord or had committed any illegal act. Accordingly, there was no basis for [the officer] to require Jones to stay at the scene and talk to him[.] [15]

 The stop in this case was less intrusive than the stop in *Jones.* And, in *Jones,* the police had separated the two individuals before the detention occurred so there was no ongoing concern that the argument would become violent. But the critical fact is that Officer Mickelsen, like the officer in *Jones,* had no objective basis for believing that a crime had occurred or that one was imminent. At the evidentiary hearing, Officer Mickelsen acknowledged that he had no reason to infer that this was a domestic violence situation: no violence had been reported, he had observed no violence, and he had no knowledge of the relationship of the people involved.

Nor did the additional facts known to the dispatcher provide reasonable suspicion for the stop.[16] The tape of the 911 call was played at the evidentiary hearing. The 911 caller stated, in a casual voice, that a man and a woman were verbally fighting and waving their arms in the parking lot. At the dispatcher's request, the caller described the two individuals and their vehicle. She did not say what the argument was about or express concern that it would become violent. Indeed, it is impossible to tell from the 911 recording whether the caller was a citizen concerned for the safety of the man or woman, a bar employee worried the argument was disturbing customers, or a nearby resident awakened by the noise.

The State argues, in essence, that any argument between a man and a woman that is heated enough to prompt a 911 call is per se reasonable suspicion of domestic violence. But many heated verbal arguments do not end in domestic violence, and there is no particularized and objective basis in the record to support a rational inference that *this* argument would end that way.[17] For these reasons, we conclude that Miller's stop was illegal and that the district court erred in denying his motion to suppress.

*Conclusion*

Miller's conviction is REVERSED.

---

11. *Id.*

12. *Id.*

13. *Id.* at 1000.

14. *Id.*

15. *Id.*

16. *See Mattern v. State,* 500 P.2d 228, 233 (Alaska 1972) ("[w]hen one officer furnishes evidence to another officer which leads to an arrest, the state must prove the reasonable basis of the former officer's information."); *State v. Prater,* 958 P.2d 1110, 1113 (Alaska App.1998) ("[a]n investigative stop made in objective reliance on a police dispatcher's bulletin is justified if the dispatcher who broadcast the bulletin possessed reasonable suspicion of imminent public danger justifying the stop.").

17. *Cf. McGee v. State,* 70 P.3d 429, 432 (Alaska App.2003) (ruling that police did not have reasonable suspicion to detain a package when there were no facts distinguishing the package from one that did not contain contraband).