**STATE of Alaska, Petitioner,**

v.

**George KENDALL, Respondent.**

**No. A–3003.**

Court of Appeals of Alaska.

June 22, 1990.

Michael S. McLaughlin, Asst. Dist. Atty., Dwayne W. McConnell, Dist. Atty., Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for petitioner.

Leslie A. Hiebert, Asst. Public Advocate, and Brant McGee, Public Advocate, Anchorage, for respondent.

OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

COATS, Judge.

On December 1, 1988, the grand jury indicted George Kendall for misconduct involving a controlled substance in the third degree, possession of cocaine, a class B felony. AS 11.71.030(a)(1). In March 1989, Kendall filed a motion to suppress evidence of a warrantless search conducted by the police on October 22, 1988, which resulted in the discovery of the cocaine. Following an evidentiary hearing, Superior Court Judge Joan Katz granted Kendall's motion and suppressed the evidence. The state filed a petition for review in this court.

We granted the petition and ordered briefing. We now reverse Judge Katz's decision ordering suppression of the evidence.

After investigating and making several undercover cocaine purchases from Lavonda Heenan, Sergeant William Gaither of the Anchorage Police Department arranged to make a final cocaine purchase from Heenan at her home. When Gaither arrived, Heenan told him that she had just sold half of what she had promised him but that "more would be coming" and that Gaither could come back later if he wished. Gaither bought what was available and departed. As Gaither left, a team of police officers arrived with a search warrant and began to search the house. While the search was in progress, two officers monitored the phone.

One of these officers intercepted an anonymous phone call and learned that an unidentified person would be coming with "some dope" in approximately fifteen minutes. Approximately fifteen minutes later, Kendall came to the front door of the house. Officer Audie Holloway, a plain clothes officer wearing surgical gloves, answered the door. Officer Gardner Cobb, who was in uniform, stayed out of sight behind the door. Holloway asked Kendall to come in, but Kendall hesitated, noticing the surgical gloves. Cobb then stepped out from behind the door. Kendall looked surprised at seeing a uniformed officer and began to back away. The officers reached for Kendall. Kendall hurled a beer toward them and turned to run. The two officers chased Kendall, wrestled him to the ground, and placed him under arrest for resisting an officer in violation of Anchorage Municipal Code § 08.05.530A.[1]

During the struggle, the officers saw the top of a propane torch protruding from Kendall's trouser waistband. According to the officers testifying at the evidentiary hearing, people who use crack cocaine employ propane torches to heat the cocaine. The officers also noticed some glass tubing protruding from Kendall's right front jacket pocket. The officers identified the glass tubing as a device to smoke crack cocaine. The officers took Kendall into the house. They removed the propane torch and glass tubing and, in the same coat pocket as the tubing, found a film canister which rattled when it was shaken. In a second jacket pocket, Cobb found a velvet bag containing something soft. As he removed the bag from Kendall's pocket, Kendall asked who had put the bag there and stated that he had never seen the bag before. Holloway upended the bag and three plastic packets containing cocaine fell out. When the police officers opened the film canister, it contained crack cocaine.

Kendall moved to suppress the results of the search, claiming that since he had been arrested for resisting an officer, the officer could search him only for fruits of that particular crime. He argued that once the officers found the bag and the canister, they were required to stop and obtain a search warrant before they could open the closed containers. The state asserted that the search could be supported by several legal theories. It argued that the officers were properly engaged in a *Coleman*[2] stop and that Kendall was searched incident to a valid arrest. The state also contended that given the facts and circumstances known to the officers at the time of the search, there was probable cause to arrest Kendall for possession or delivery of controlled substances.

The trial court concluded that because the officers had arrested Kendall for resisting an officer, they could not search him for evidence of any other crime. It rejected the state's argument that because the officers learned information in a legal patdown, they had probable cause to arrest for the additional offense of possession or delivery of cocaine. The court suppressed the evidence and dismissed the indictment.

The state asked for reconsideration, arguing that the officers' misstated legal

1. Anchorage Municipal Code § 08.05.530A states:
It is unlawful for any person to willfully resist, delay or obstruct any public officer in the discharge or attempt to discharge any duty of his office.

2. *Coleman v. State,* 553 P.2d 40 (Alaska 1976).

opinions should not govern the legality of the search. In response, the trial court held that the officers' removal of the two containers without examining the contents was proper as a search incident to the arrest on the resisting an officer charge. The court also expressly found that the officers had probable cause to arrest Kendall on cocaine charges prior to opening the containers. The court, though, applied a subjective standard and held that evidence must be suppressed. This petition followed.

When Kendall arrived at the door of the house where the police were searching, the police had the legal authority to detain Kendall as part of an investigative stop. An investigatory stop is permissible "where the police officer has a reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred...." *Coleman v. State,* 553 P.2d 40, 46 (Alaska 1976). *See also Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Heenan had told Gaither that more cocaine would be coming at a later time. The officers then received an anonymous phone call from which they learned that an unidentified person would be coming with "more dope" in approximately fifteen minutes. The officers reasonably understood this to mean that someone would be delivering more cocaine. Approximately fifteen minutes later, Kendall arrived at the front door of the house. Under these circumstances, the officers were entitled to conclude that Kendall might be the person who was bringing more cocaine to the house. The officers had the right to detain Kendall briefly to determine his identity and take other reasonable steps to further their investigation. When Kendall attempted to flee the police were entitled to use reasonable force to detain him.

During the course of the struggle to detain Kendall, the officers saw the top of a propane torch which was protruding from Kendall's trouser waistband. The police testified that these propane torches are used to heat crack cocaine. The police also noticed glass tubing protruding from Kendall's right front jacket pocket. The police identified the tubing as a device which is often used in smoking crack cocaine. The police then took Kendall into the house and found the film canister and the velvet bag.

In her ruling, Judge Katz stated the following (emphasis original):

Without detailing the other relevant facts, the court finds that at the time of removal of the closed containers from the defendant, the officers had probable cause to arrest the defendant on cocaine charges. They did not do so, however, until after the search of the containers. The issue presented is whether the search of the contents of the containers can properly be considered incident to arrest, when (1) the arrest was made for a crime (resisting) which results in production of no evidence that could be concealed in these containers, but (2) grounds existed at the time of the search of the containers for arresting defendant for a crime (misconduct involving a controlled substance), evidence of which *could* be located in the containers.

Judge Katz reasoned that the law would best protect individuals' privacy interests by requiring police officers to first determine whether they had probable cause to arrest for a particular crime before allowing the officers to conduct a search incident to an arrest for evidence of that crime. She stated, "Officers operating on hunches who have failed to determine whether they have probable cause to arrest for the crime for which they are seeking evidence, could intrude unconstitutionally on the privacy rights of others."

As Judge Katz noted in her opinion, there is authority to support her position. *See State v. Ercolano,* 79 N.J. 25, 397 A.2d 1062, 1067–69 (1979). However, an arrest is legal in this state when the objective information which the police have is sufficient to justify the arrest.[3] For instance, in

---

3. Alaska law also uses an objective reasonable person test in determining whether a person is in custody. In deciding whether a person is in custody, the court determines "whether the defendant, as a reasonable person, would have felt

*State v. White,* 707 P.2d 271, 278–79 (Alaska App.1985), we stated that an arrest is valid

> if the information the officers had … amounted to probable cause. In making this determination, we look to all the information the police had, and not merely the information that they put in their affidavit for the the search warrant. [The officers'] testimony that they did not, in fact, believe that they had probable cause is irrelevant.

In his treatise on the fourth amendment, Professor LaFave extensively discusses the issue of whether courts should review the objective facts which the police officers knew in determining whether there was a valid arrest or whether courts should consider the police officers' subjective conclusion that they had probable cause. W. LaFave, I *Search and Seizure* § 1.4(d), at 86–90 (2nd ed. 1987). LaFave indicates that *Ercolano,* the case relied upon by Judge Katz, represents a minority view. According to LaFave, the majority view is that the court should determine whether an officer has probable cause to arrest based upon the objective facts which the officer knew at the time of the arrest.

LaFave strongly favors the majority view, finding that the *Ercolano* rule "erects an unduly rigid standard by insisting 'that policemen act on necessary spurs of the moment with all the knowledge and acuity of constitutional lawyers.'" *Id.* at 90 (quoting *State v. Romeo,* 43 N.J. 188, 203 A.2d 23, 32 (1966), *cert. denied,* 379 U.S. 970, 85 S.Ct. 668, 13 L.Ed.2d 563 (1965)). He concludes that it is unlikely that a rule which requires the police to state the correct theory which justified an arrest would have beneficial results. In LaFave's view, where police give the wrong reason for conducting an arrest, they likely would give the proper reason if

free to break off the questioning." *Hunter v.*

they knew that the first ground was invalid.

It seems that application of the rule requiring officers to state the correct ground before an arrest is valid would lead to a procedure where officers would be trained to state every possible ground for making an arrest, so that the arrest would be upheld if any one of the grounds was valid. Furthermore, requiring the officer to state the correct ground for arrest would result in the exclusion of evidence in cases where the person who was arrested had not had his rights violated.

In the instant case, the police had reasonable suspicion to stop Kendall, to briefly detain him, and ultimately had sufficient information to arrest him for possession of cocaine. Kendall personally had no interest in whether the police who arrested him were able to correctly articulate the basis for the arrest. The only possible goal which we would accomplish by suppressing the evidence against Kendall would be to require police in future cases to more carefully articulate their grounds for arrest. We are unconvinced that such a ruling would have any positive effect. We accordingly adhere to the conclusion which we have stated in previous cases: the trial court should analyze the objective information which the police had at the time when they made an arrest in determining whether there was probable cause to make that arrest.

Accordingly, we REVERSE the order to suppress the evidence.

*State,* 590 P.2d 888, 895 (Alaska 1979).