**Robert W. SNIDER, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 1592.

Court of Appeals of Alaska.

May 22, 1998.

Robert M. Herz, Assistant Public Defender, Palmer, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

W.H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., MANNHEIMER, J., and RABINOWITZ, Senior Supreme Court Justice.*

RABINOWITZ, Senior Justice.

## I. *INTRODUCTION*

The primary question raised in this appeal concerns the proper scope of a warrantless search incident to a lawful arrest.

## II. *FACTS AND PROCEDURES*

Robert W. Snider went for a walk, armed and intoxicated, along Bogard Road in Wasilla on August 13, 1994. The police received a complaint that Snider, while walking along Bogard Road, was waiving a handgun in the air and appeared to be hallucinating. Alaska

---

* Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

State Trooper Randall Hahn was given a description of Snider (blue shirt, black hat, older male) and was dispatched to investigate. Shortly after 9:00 P.M., he located Snider on Bogard Road. When Trooper Hahn first observed Snider, he thought Snider was "apparently hallucinating"—as he was walking down the road leaving markers to identify his trail. According to Hahn, Snider appeared to be "obviously intoxicated." Snider's speech was slurred, his eyes bloodshot, his gait swaying and he had "a very strong odor of alcohol on his breath." After observing that Snider had a handgun strapped to his left leg, Hahn determined that he could arrest Snider for possessing a weapon while intoxicated.

Trooper Hahn then arrested Snider. Upon disarming him, Hahn determined that Snider's revolver was loaded. Trooper Hahn then commenced a pat-down search of Snider's person for additional weapons before placing him in the patrol car. During the course of his search, Hahn found a glass pipe, five to six inches in length, in one of Snider's pockets. The pipe was screened and blackened at both ends. Hahn stated that the pipe appeared to him to be a crack or cocaine pipe, and, according to his training and experience, individuals who have this type of pipe on their person also carry some amount of crack cocaine or cocaine with them.

Hahn then continued his pat-down search of Snider and located a two-inch by two-inch black, plastic box in Snider's upper left shirt pocket. At the time Hahn removed the box from Snider's pocket, Snider "made an unsolicited comment that both the box and the pipe had been found together along the road, and he indicated farther down the road from the direction he had come." Trooper Hahn testified that, based on his knowledge, training and experience, he believed the container probably contained narcotic substances. Acting on this background, Hahn unwrapped the foil containers found within the box and discovered what appeared to be rock cocaine.

Hahn then transported Snider to jail and called an assistant district attorney. The State's attorney expressed doubts as to the legality of the search of the contents of the plastic box Hahn had found on Snider's person and instructed Hahn to seek a curative search warrant. Thereafter, on August 15, Hahn requested and received a warrant for the search of the box. At the hearing for the warrant, Hahn testified that he had searched Snider after his arrest in order to determine if Snider possessed any other weapons, and that during this search he found the pipe and the plastic box. Based on Hahn's testimony, District Court Judge John D. Mason issued a warrant for a search of the plastic box. In so doing, Judge Mason emphasized that Hahn had found a cocaine pipe on Snider's person and that Snider had a previous drug conviction. (The prior conviction had been made known to Hahn at the time of the arrest and pat-down search.)

Subsequently, *pro tem* Superior Court Judge Stephanie Rhoades denied Snider's motion to suppress as evidence the rock cocaine discovered by Trooper Hahn. Later in the course of proceedings in the case, Superior Court Judge Beverly W. Cutler denied Snider's motion to dismiss the charges against him based on the ground that the 120–day speedy trial limit of Criminal Rule 45 had been exceeded. Snider then pled no contest to one count of misconduct involving weapons in the third degree, AS 11.61.200(a)(1) (felon in possession) and one count of misconduct involving a controlled substance in the fourth degree, 11.71.040(a)(3)(A) (possession of cocaine). Snider reserved and now appeals the denial of his suppression motion as well as the superior court's denial of his Rule 45 motion. *See Cooksey v. State*, 524 P.2d 1251 (Alaska 1974).

We affirm.

### III.  *DISCUSSION*

A.  *Validity of the Initial Warrantless Search Incident to Arrest.*[1]

■ A law enforcement officer acting without a warrant may search a suspect inci-

---

1.  In his reply brief, Snider argues that the State is estopped from arguing that the initial search

was legal because the State had conceded it was illegal at trial. Snider contends he was preju-

dent to arrest if: the arrest is valid, the search is carried out roughly contemporaneously with the arrest, the arrest is not a pretext for the warrantless search, and the arrest is for a crime, evidence of which could be concealed on a person. *McCoy v. State*, 491 P.2d 127, 138 (Alaska 1971); *Nelson v. State*, 781 P.2d 994, 999 (Alaska App.1989).

■ Under federal law, an officer may search all of the person and any possessions found upon the person upon arrest. *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Under Alaska's Constitution, a warrantless search incident to an arrest is limited in its scope. In *Zehrung v. State*, 569 P.2d 189, 199–200 (Alaska 1977), *modified on other grounds*, 573 P.2d 858 (Alaska 1978), the Supreme Court of Alaska held that an arresting officer may, without a warrant, search the person of the arrestee only for weapons or for evidence of the crime for which the suspect was arrested. In *Jackson v. State*, 791 P.2d 1023, 1028 (Alaska App.1990), we applied *Zehrung* in holding that absent an articulable basis for suspicion that the arrestee is carrying an unusually small weapon, a warrantless weapons search incident to an arrest must be limited to an examination of articles that could hold a weapon of normal size.

*Jackson* involved an arrest for failure to appear in court. Subsequent to the arrest, the officer went through the arrestee's wallet in search of razor blades and very small knives. As a result, the officer found drugs. This court held that a weapons search of the wallet was unreasonable. We relied on the distinction drawn by the California Supreme Court in *People v. Brisendine*, 13 Cal.3d 528, 119 Cal.Rptr. 315, 531 P.2d 1099, 1108–09 (1975), which upheld a weapons search of a backpack but voided the search of a bottle and envelopes found within the backpack. *Jackson*, 791 P.2d at 1027–28. Chief Judge Bryner concurred in *Jackson*, emphasizing that the decision was controlled by *Zehrung*. *Id.* at 1029. If the weapons rationale would even allow the examination of the contents of a wallet, Chief Judge Bryner contended, *Zehrung* would be eviscerated, as the officer could effectively conduct a full search of the suspect. *Id.* at 1029–30.

■ Applying *Jackson*, *Zehrung* and *State v. Kendall*, 794 P.2d 114 (Alaska App.1990), to the facts of this case leads us to the conclusion that the superior court correctly determined that probable cause existed for the warrantless seizure and search of the contents of the black plastic box which was found on Snider's person.[2] Of particular sig-

---

diced by the concession because it led his lawyer to terminate a line of questioning of Trooper Hahn as to his knowledge of search and seizure law and why he conducted the search. Apparently, Snider sought to prove that even if the search of Hahn was justifiable as a search for weapons or evidence of the crime for which he was arrested, Trooper Hahn did not have either of these justifications in mind when he conducted the search.

Snider's argument is without merit. The reasonableness of Hahn's search depends on the objective circumstances of the search, not on Hahn's knowledge of search and seizure law. If the circumstances justified the search that Hahn conducted, then the search was reasonable, regardless of whether Hahn knew that search fell within the confines of this court's search and seizure jurisprudence. *Beauvois v. State*, 837 P.2d 1118, 1121 n. 1 (Alaska App.1992) (Police officer's explanation for the stop of defendant's vehicle held irrelevant. "The test is whether under the facts known to the police officer, the stop of the car was objectively justified."). The circumstances of the search were fully developed below. Because Snider's lawyer's line of questioning would not have yielded information that

would have brought the legality of the search into question, Snider was not prejudiced by the State's concession of illegality.

Snider cites *Stephens v. State*, 698 P.2d 664 (Alaska App.1985), as contrary authority. There we declined the State's invitation to rationalize a search of a criminal for identification as a search for weapons used in an assault. We explained that "[t]here is nothing in this limited record to suggest that there was any evidence of the assault for which the police could search." *Id.* at 665. In other words, the circumstances did not justify a search for evidence of the offense for which the suspect had been arrested. Nothing in *Stephens* bars the consideration of a justification which is supported by the circumstances of the arrest.

**2.** Stephanie Rhoades, Superior Court Judge, *pro tem*, issued a ruling in which she found:

that there was sufficient evidence presented ... in support of the search warrant in this case.

...

Indeed the warrant application did not include full testimony of what the Trooper's education, training and experience in the area of

nificance to the resolution of this appeal is our opinion in *Kendall.*

In *Kendall,* the defendant arrived at a house where the police were executing a search warrant (an undercover officer had just purchased cocaine from the owner of the house). Kendall showed up fifteen minutes after the police had intercepted a phone call informing them that an unidentified person would be delivering "some dope" to the address. Kendall became suspicious and attempted to flee when an undercover officer, wearing latex gloves, answered the door. During this escape attempt, Kendall threw a beer bottle at the pursuing officers. He was wrestled to the ground and arrested for resisting arrest. During the officers' struggle with Kendall, they observed a propane torch sticking out of the waistband of Kendall's pants; they also saw glass tubing in his front jacket pocket.

At the suppression hearing, the officers testified that from experience they knew these types of instruments were used in smoking crack cocaine. When the officers removed these items they also discovered a film canister which rattled when shaken and a velvet bag containing something soft. The officers emptied the containers and found cocaine in them. The trial court suppressed the evidence because the stated reason for arrest, resisting arrest, would not justify the scope of the search; the trial court did find, however, that at the time the containers were discovered the officers had probable cause to arrest Kendall for possession of cocaine. We reversed the trial court's decision, holding that since objectively at the time of arrest the officers could have arrested Kendall for "cocaine charges" the officer's subjective reliance upon the resisting arrest charge did not limit the scope of the search. *Id.* at 117.

In reaching this conclusion, we said:

> narcotics was which led him to believe that the glass pipe found was a crack pipe and that the container was of the type which typically contains drugs used in connection with crack pipes. Nonetheless, it was clear from the record that the witness was a State Trooper and had received the standard training in this area. Further, Judge Mason asked to actually view the pipe and the container and, as stated on the record at the evidentiary hearing, it is

In his treatise on the fourth amendment, Professor LaFave extensively discusses the issue of whether courts should review the objective facts which the police officers knew in determining whether there was a valid arrest or whether courts should consider the police officers' subjective conclusion that they had probable cause. W. LaFave, I *Search and Seizure* § 1.4(d), at 86–90 (2nd ed.1987). LaFave indicates that *[State] v. Ercolano,* [79 N.J. 25, 397 A.2d 1062 (1979),] the case relied upon by Judge Katz, represents a minority view. According to LaFave, the majority view is that the court should determine whether an officer has probable cause to arrest based upon the objective facts which the officer knew at the time of the arrest.

LaFave strongly favors the majority view, finding that the *Ercolano* rule "erects an unduly rigid standard by insisting 'that policemen act on necessary spurs of the moment with all the knowledge and acuity of constitutional lawyers.'" *Id.* at 90 (quoting *State v. Romeo,* 43 N.J. 188, 203 A.2d 23, 32 (1964), *cert. denied,* 379 U.S. 970, 85 S.Ct. 668, 13 L.Ed.2d 563 (1965)). He concludes that it is unlikely that a rule which requires the police to state the correct theory which justified an arrest would have beneficial results. In LaFave's view, where police give the wrong reason for conducting an arrest, they likely would give the proper reason if they knew that the first ground was invalid.

It seems that application of the rule requiring officers to state the correct ground before an arrest is valid would lead to a procedure where officers would be trained to state every possible ground for making an arrest, so that the arrest would be upheld if any one of the grounds was valid. Furthermore, requiring the officer

> almost within the purview of common knowledge that a glass pipe burned at both ends and containing a mesh or screen-like material is used to ingest crack cocaine.
> There is sufficient probable cause from the totality of the circumstances here ... to believe that the small container found in close proximity to a crack pipe on the defendant's person would contain an illegal substance.

to state the correct ground for arrest would result in the exclusion of evidence in cases where the person who was arrested had not had his rights violated.

In the instant case, the police had reasonable suspicion to stop Kendall, to briefly detain him, and ultimately had sufficient information to arrest him for possession of cocaine. Kendall personally had no interest in whether the police who arrested him were able to correctly articulate the basis for the arrest. The only possible goal which we would accomplish by suppressing the evidence against Kendall would be to require police in future cases to more carefully articulate their grounds for arrest. We are unconvinced that such a ruling would have any positive effect. We accordingly adhere to the conclusion which we have stated in previous cases: the trial court should analyze the objective information which the police had at the time when they made an arrest in determining whether there was probable cause to make that arrest.

*Id.*

Application of *Kendall* to the facts of this case leads us to the conclusion that Trooper Hahn's warrantless search of the contents of the black plastic box found on Snider's person should be upheld on two separate bases. First, Trooper Hahn's discovery of the glass pipe, his knowledge that such pipes are commonly used to smoke cocaine, and that people who smoke cocaine and possess a cocaine pipe on their person commonly carry the drug on their person, objectively furnished probable cause for the arrest of Snider for unlawful possession of drugs as well as probable cause for a search of the contents of the plastic box for evidence of drug possession. The mere fact that Trooper Hahn stated he arrested Snider for possessing a weapon while intoxicated does not negate the existence of sufficient objective evidence furnish-

ing probable cause to arrest Snider for unlawful possession of drugs and to thereafter conduct a warrantless search for evidence of unlawful drug possession.[3]

Additionally, AS 11.61.210 proscribes possession of a firearm where a person's "physical or mental condition is impaired as a result of ... intoxicating liquor or a controlled substance."[4] The facts outlined above, and Trooper Hahn's observations of Snider's erratic behavior while possessing a firearm, objectively provided probable cause for the officer to believe that Snider was high on cocaine and thus to search Snider's person for evidence of cocaine possession. Snider had been arrested for possession of a weapon while intoxicated. Since intoxication includes being under the influence of drugs, the facts known to Trooper Hahn objectively justified the search of Snider's person for drugs.

We therefore affirm the superior court's denial of Snider's motion to suppress.

### B. *Criminal Rule 45—Speedy Trial.*

██ Snider contends that the 120–day speedy trial limit of Criminal Rule 45 was exceeded by twenty days. He argues that the time under the rule began to run on August 13, when he was arrested. Snider's calculation is incorrect; Rule 45 did not begin to run until August 24, when Snider was served with a copy of the charge. *See* Alaska R.Crim. P. 45(c)(1).

Snider further argues that the time under the rule was not tolled by virtue of his September 20 motion to dismiss (based on the State's alleged failure to produce certain discovery) because his motion to dismiss was never ruled on. We reject this contention. Time under the rule was tolled and did not commence to run again until the motion to dismiss was withdrawn on October 12. *See*

3. In other words, the discovery of the crack pipe during Hahn's pat-down search of Snider's person independently rendered reasonable a search of Snider's person for drugs incident to his arrest. The discovery of the used cocaine pipe furnished specific and articulable objective support for a reasonable officer's belief that Snider was guilty of possession of cocaine, and that

Snider might possess other drugs on his person. Thus, the discovery of the cocaine pipe independently rendered reasonable a search of Snider's person for drugs incident to his arrest.

4. Cocaine is a controlled substance. AS 11.81.900(b)(6); AS 11.71.900(4); AS 11.71.150(c).

*State v. Clouatre,* 516 P.2d 1189, 1191 (Alaska 1973); *Drake v. State,* 899 P.2d 1385, 1388 (Alaska App.1995) (defense motion tolls Rule 45 until it is withdrawn).

In short, we affirm Judge Cutler's determination that Criminal Rule 45 was not violated since only a total of ninety-six days had run under the provisions of Rule 45.[5]

**IV. CONCLUSION**

The judgment of the superior court is AFFIRMED.[6]

5. The State fashioned the following chart which summarizes Judge Cutler's correct application of Rule 45 to the facts appearing in this record.

| Event | Date | Effect on Rule | Days |
|---|---|---|---|
| Arraignment (Snider receives indictment) | 08/24/94 | Start | 0 |
| Motion to Dismiss | 09/20/94 | Stop | 27 |
| Motion to Withdraw | 10/12/94 | Start | 27 |
| Trial Call | 11/03/94 | Continues Running | 51 |
| Defense Continuance | 12/01/94 | Stop | 79 |
| Status Conference (issues taken under advisement) | 03/22/95 | Stop | 79 |
| End of Rule 45 30–day advisement period | 04/21/95 | Start | 79 |
| Ruling on issues under advisement | 05/09/95 | Stop | 96 |

6. Our resolution of the issues discussed above makes it unnecessary to address any other issue raised in this appeal.