Hillsborough-northern judicial district
No. 2006-458

### THE STATE OF NEW HAMPSHIRE

v.

### ERNEST P. PEPIN

Argued: March 21, 2007
Opinion Issued: May 1, 2007

*Kelly A. Ayotte*, attorney general (*Benjamin J. Agati*, attorney, on the brief and orally), for the State.

*James T. Brooks*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, J. Following a trial on stipulated facts in the Superior Court (*Barry*, J.), the defendant, Ernest P. Pepin, appeals his conviction for operating a motor vehicle after having been certified as a habitual offender. *See* RSA 262:23 (2004) (amended 2006). The sole issue on appeal

is whether the trial court erred in denying the defendant's motion to suppress. We reverse and remand.

The trial court found the following: The defendant was stopped shortly after midnight on October 6, 2005, by Officer Eric Desmarais of the Manchester Police Department who heard the tires of the defendant's vehicle "squeal." Desmarais' police cruiser was positioned immediately behind the defendant at a red light in a left turn lane. When the light changed, Desmarais heard the defendant's tires squeal, a squeal that was more than a "chirp" which caught Desmarais' attention. Desmarais testified that it was a "club" night in Manchester and the road conditions were dry. He activated his blue lights and pulled the defendant over. The defendant did not appear intoxicated, but in doing a license check, Desmarais learned that the defendant was a habitual offender.

The defendant filed a motion to suppress, contending that the stop of his vehicle violated Part I, Article 19 of the New Hampshire Constitution and the Fourth and Fourteenth Amendments of the United States Constitution. The trial court denied the motion, finding that Desmarais was justified in stopping the defendant's vehicle because he had a reasonable suspicion that the defendant had committed a crime.

On appeal, the defendant argues that he was subject to an unlawful seizure because Desmarais lacked reasonable suspicion when he ordered him to stop. Accordingly, the defendant argues that the trial court erred in denying his motion to suppress.

Our review of the trial court's motion to suppress is *de novo*, except as to any controlling facts determined by the trial court in the first instance. *State v. Gubitosi*, 152 N.H. 673, 676 (2005). We first address the issues under the State Constitution and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

For a police officer to undertake an investigatory stop, the officer must have a reasonable suspicion—based upon specific, articulable facts taken together with rational inferences from those facts—that the person stopped has been, is, or is about to be, engaged in criminal activity. *State v. Beauchesne*, 151 N.H. 803, 809 (2005). In deciding whether the officer conducted a lawful investigatory stop, we conduct a two-step inquiry: first, we determine when the defendant was seized; second, we determine whether, at that time, the officer possessed a reasonable suspicion that the defendant was, had been or was about to be engaged in criminal activity. *Id.*

Neither party disputes that the defendant was seized when Desmarais pulled the vehicle over. Therefore, we turn to the second inquiry: whether Desmarais possessed a reasonable suspicion that the

defendant was, had been or was about to be engaged in criminal activity. *Id.* To determine the sufficiency of an officer's suspicion, we consider the articulable facts in light of all surrounding circumstances, keeping in mind that a trained officer may make inferences and draw conclusions from conduct that may seem unremarkable to an untrained observer. *State v. McKinnon-Andrews*, 151 N.H. 19, 26 (2004). A reasonable suspicion must be more than a hunch. *Id.* The articulated facts must lead somewhere specific, not just to a general sense that this is probably a bad person who may have committed some kind of crime. *Id.* The officer's suspicion must have a particularized and objective basis in order to warrant that intrusion into protected privacy rights. *Id.*

The State argues that Desmarais had reasonable suspicion of a violation of the road racing statute, RSA 265:75, I (2004), which provides:

> No person shall drive any vehicle on a highway in any race, speed competition or contest, drag race or acceleration contest, test of physical endurance, exhibition of speed or acceleration, or for the purpose of making a speed record; and no person shall in any manner participate in any such race, competition, contest, test or exhibition.

The State argues that Desmarais suspected the defendant of engaging in an "exhibition of speed or acceleration." RSA 265:75. Courts construing similar statutory language have found that "[m]oving from a stopped position with the tires spinning suggests a vehicle is accelerating" and thus provides reasonable suspicion of an "exhibition of acceleration." *Singleton v. State*, 91 S.W.3d 342, 346 (Tex. App. 2002) (citing cases). However, such suspicion is generally supported by other facts *in addition* to squealing tires, such as an observation that the engine revved and the car traveled "at a high rate of speed," *Jones v. State*, 579 So. 2d 66, 68-69 (Ala. Crim. App. 1991); the car went forward fifty yards, stopped, backed up, then accelerated forward, causing tires to squeal, spin and throw gravel, *State v. Whitehurst*, 772 P.2d 1251, 1253 (Kan. Ct. App. 1989); or the car squealed and rapidly accelerated in reverse, creating "an unusual amount of dust," *State v. Ova*, 539 N.W.2d 857, 860 (N.D. 1995).

In *Singleton*, a driver squealed his tires while making a right turn. *Singleton*, 91 S.W.3d at 346. The officer was behind him and pulled him over for squealing his tires. *Id.* The court ruled that he lacked reasonable suspicion to stop the vehicle for excessive acceleration. *Id.* at 347. As the *Singleton* court put it, "Squealing of tires alone suggests a sound and does not always indicate acceleration." *Id.* at 346. It further concluded that "[a]t no point did [the officer] testify that it appeared [the defendant] was accelerating through the turn or that acceleration was the cause of the

tires squealing . . . . There were no other facts articulated by the officer to suggest that the reason for the squealing of the tires was acceleration." *Id.*

In this case, too, the trial court did not find any fact to establish that the squeal of the tires was an exhibition of speed or acceleration. The trial court's characterization of the car as "lurch[ing] forward" has no support in the record. Also, as in *Singleton,* the officer in this case did not testify that the defendant's speed increased after the squeal; in fact, he stated: "[The driver] wouldn't have had time to even get up to speed." The defendant complied almost instantly and pulled over "about a hundred feet" from the intersection. Further, Desmarais did not observe any erratic driving before he heard the squeal.

■ Thus, we hold that a brief squeal of tires, without more, does not support a reasonable suspicion that the road racing statute had been, was or was about to be violated. *Singleton v. State,* 91 S.W.3d at 346; *State v. Giger,* 130 P.3d 149 (Kan. Ct. App. 2006) (table).

The State also argues that Desmarais had reasonable suspicion that the defendant was driving while intoxicated in violation of RSA 265:82, I (2004), which provides in pertinent part:

> No person shall drive or attempt to drive a vehicle upon any way:
>
> (a) While such person is under the influence of intoxicating liquor
>
> . . . .

Beyond the brief tire squeal, there was no erratic operation or traffic violation to support reasonable suspicion of driving while intoxicated. *See State v. Smith,* 154 N.H. 113, 116 (2006) (reasonable suspicion and/or probable cause existed when officers witnessed the defendant cross the yellow line, drive completely off the road, run a stop sign, and nearly collide with an oncoming vehicle). The only other facts upon which the State relies are that it was a "club night" in Manchester and that the police are "always looking for possible drunk drivers." The State argues, "[G]iven the place and time of the defendant's behavior, [the officer's] suspicions were reasonable that the defendant may have been driving under the influence."

■ We have observed that: "Although a person's mere presence in a high-crime area, even at a late hour, is not a sufficient basis, standing alone, to justify a brief investigatory detention, the hour and the character of the area may cast an individual's own conduct in a more suspicious light." *State v. Vadnais,* 141 N.H. 68, 70-71 (1996). However, in analyzing facts that would support reasonable articulable suspicion, it is the particular and not the general that counts. Here, there was no evidence

that the defendant had pulled out of a club parking lot or that there were any clubs in the immediate vicinity of the stop. Therefore, there is little reason why the character of the area in this case should "cast [the defendant's conduct] in a more suspicious light." *Id.* In the absence of any additional specific facts, we hold that the brief squeal of tires, even on "club night," did not give rise to reasonable suspicion of driving while intoxicated.

Because we conclude that the stop violated the State Constitution, we need not decide whether it also violated the Federal Constitution.

*Reversed and remanded.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.